STEAGALL, Justice
(dissenting).
I disagree with the Court of Criminal Appeals’ conclusion that the publicity contract between Judith Ann Neelley and her defense counsel, Robert French, Jr., did not adversely affect his performance of her defense. Although the contract was not signed until after the trial had concluded, there is evidence that it was in negotiation before that time and that the contract directly influenced French’s trial strategy.
The most questionable aspect of this strategy was having Neelley testify on her own behalf. French presented no evidence by the testimony of expert witnesses or by other means to establish Neelley’s “battered wife syndrome” defense, and he never consulted with any mental health professionals to learn about the disorder so that it could be explained rationally to a jury. Instead, French merely had Neelley herself describe Jier mental condition and her abusive husband. During the four-day direct examination, French elicited damaging testimony about the many lurid aspects of Neelley’s life; he also brought out detailed testimony about portions of Neelley’s pre-trial confession and certain out-of-court statements made by her husband that had already been ruled inadmissible by the trial court and that the State had no way of bringing into evidence. The prejudice that this testimony caused is clear; the trial court’s sentencing order shows that it gave weight to her gratuitous testimony when it rejected the jury’s recommendation of life without parole and sentenced Neelley to death.
On direct appeal of her conviction, the Court of Criminal Appeals relied on Neel-ley’s testimony in rejecting at least one viable issue Neelley raised, that is, the possible illegality of her pre-trial confession. See Neelley v. State, 494 So.2d 669 (Ala.Crim. App.1985), affirmed, 494 So.2d 697 (Ala.1986). The Court of Criminal Appeals stated that Neelley’s gratuitous account of her past “redefine[d] and [gave] new meaning to traditional concepts of depravity and evil” and “virtually annihilated any prejudicial effect that the admission of her confession could have had.” 494 So.2d at 678. The Court of Criminal Appeals emphasized that Neelley “volunteered” and “deliberately injected” that testimony into the trial and that it could not have been admissible had the State tried to bring it in. 494 So.2d at 677.'
Neelley’s testimony was central to French’s copyrighted, 400-plus page “appellate brief,” which he has attempted to market as the basis for a book or movie and from which, by his own admission, he still hopes to profit. There is evidence that when Neel-ley’s present counsel learned of the contract French attempted to prevent Neelley from showing it to them and hindered their at *511 tempts to investigate the negotiation of the contract.
After thoroughly reviewing the record on which this petition is based, I am convinced that the publicity contract between Neelley and French created an actual conflict of interest that adversely affected his ability to defend her. However abhorrent her crime, Neelley had a constitutional right to effective assistance of counsel; I think she was denied this right. I would therefore reverse the judgment of the Court of Criminal Appeals and order a new trial.
ALMON, J., concurs.